UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

EARLENE LEACH,

          Plaintiff,

       v.                                   Case No. 19-C-461

ANDREW M. SAUL,
Commissioner of Social Security,

          Defendant.

---

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

---

      This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Earlene Leach's application for supplemental security income under Title XVI of the Social Security Act. For the reasons set forth below, the Commissioner's decision will be reversed and remanded for further proceedings.

## BACKGROUND

      On January 27, 2015, Leach completed an application for supplemental security income, alleging disability beginning August 1, 2011. She listed bipolar disorder, tendonitis in the right arm, degenerative disc disease, a herniated disc, "OA," a pinched nerve in her neck, arthritis in her wrists, Type 2 diabetes, high blood pressure, and "HCL" as the conditions that limited her ability to work. R. 308. After her application was denied initially and on reconsideration, Leach requested an administrative hearing before an administrative law judge (ALJ). ALJ Chad Gendreau held a hearing on November 2, 2017. Leach, who was represented by counsel, and a vocational expert (VE) testified at the hearing. R. 29–69.

At the time of the hearing, Leach was 54 years old. R. 37. She lived alone in an apartment on the first floor of the complex. *Id.* She completed the ninth grade. R. 38. Although she did not obtain a GED, she took a manufacturing course and CNA classes. R. 39. As for Leach's employment history, she ran a machine to create agricultural equipment, worked in shipping and receiving and packing, drove a forklift, and provided home healthcare. R. 40–41.

Leach testified that she experiences pain in her lower back. R. 42. Her pain runs from her neck down her spine. *Id.* She is treated at pain management and has a back brace. R. 43. She was prescribed Oxycodone, Topamax, Imitrex, and muscle relaxers for the pain. R. 43–44. Leach also received injections but reported they were not effective. R. 44. Leach testified that she has left and right shoulder pain. *Id.* Leach reported having daily headaches. R. 46. She will wake up with the headache, and it will last all day. *Id.* To treat the headache, she takes one of her pills, turns down all of the lights, and forces herself to go to sleep. Sometimes the headaches cause her to vomit. *Id.* She also testified that she can go days without having headaches. *Id.* As to her mental limitations, Leach testified that she was diagnosed with mood disorder, bipolar disorder, post-traumatic stress disorder, and bereavement disorder. R. 48. She stated that her mental health issues prevent her from concentrating and cause her to become easily aggravated. *Id.*

Leach then described her day-to-day activities. She testified that her daughter helps her with chores, prepares her meals, and goes grocery shopping for her. R. 50. Leach indicated that she does not drive because her back bothers her. R. 38. She stated she liked to read the Bible and watch movies. R. 51. Leach reported that she can stand for five to fifteen minutes, sit for five to sixty minutes, and lift about six or seven pounds. R. 52–53.

In a ten-page decision dated April 19, 2018, the ALJ found Leach was not disabled. R. 13–22. The ALJ concluded Leach had not engaged in substantial gainful activity since January 27,

2015, the application date. R. 15. The ALJ found that Leach had the following severe impairments: degenerative disc disease, degenerative joint disease, and headaches. *Id.* He then concluded that Leach did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17.

The ALJ ultimately determined Leach had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except "the claimant can sit and stand at her own discretion. She can occasionally reach overhead and frequently reach in all other directions. The claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally work at unprotected heights, and have occasional exposure to moving mechanical parts and vibrations." *Id.* With these limitations, the ALJ found that Leach was unable to perform any past relevant work as a shipping and receiving clerk. R. 20. Nevertheless, considering Leach's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Leach can perform, including Cashier II, Agricultural Sorter, and Information Clerk. R. 21. Based on these findings, the ALJ concluded Leach has not been under a disability since January 27, 2015, the date the application was filed. *Id.*

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Leach's request for review. After the Appeals Council issued its decision, Leach commenced this action for judicial review.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a

limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the Social Security Administration (SSA) at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom if ever available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*,

4

600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that

5

of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Leach raises two challenges to the ALJ's decision, but the court finds only one need be addressed since it is enough by itself to require a remand. Leach asserts that the ALJ failed to properly consider and evaluate her migraines. More specifically, Leach argues that the ALJ improperly cherry-picked favorable evidence to support his findings that Leach's allegations of impairment related to her migraines are not fully consistent with the record. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Leach also asserts that the ALJ erred in adopting an RFC that reflects no work limitations based on her migraines. An RFC is an administrative assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect her ability to work. SSR 96-8p, 1996 WL 374184, at *2. The RFC represents "the maximum a person can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 96-8p). In forming the RFC, an ALJ must review all of the relevant evidence in the record and "consider all limitations that

6

arise from medically determinable impairments." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014).

In this case, Leach testified that she wakes up with a headache every day and that the headache lasts all day. R. 46. To treat the headache, she takes one of her pills, turns down all of the lights, and forces herself to go to sleep. Sometimes the headaches cause her to vomit. *Id.* She also testified that she can go days without having headaches. *Id.* When discussing Leach's migraines, the ALJ noted that Leach reported that she wakes up with headaches, occasionally lasting all day. R. 18. He indicated that, while Leach complained of headaches, *id.* (citing R. 545, 811, 818, 824, 1019, 1065), her allegations of impairment are not fully consistent with the evidence. To support his conclusion, the ALJ noted that "neurological examinations consistently indicated normal findings," *id.* (citing R. 563, 843, 849, 864, 989), and that "[p]hysician notes provide that the claimant's migraines are well managed with Topamax and Imitrex," *id.* (citing R. 757). But the treatment records also show that Leach reported to her nurse practitioner that, while her migraines were no longer a daily occurrence because of the medication, she still had migraines twice a week, R. 1057, and that treatment providers continued to document that Leach presented to medical appointments with migraines despite taking the medication, R. 754, 758, 792, 799, 812, 1016, 1019, 1022, 1028, 1032, 1041.

While an ALJ is not required to mention every piece of evidence in the record, he must not ignore entire lines of evidence related to a claimant's condition or impairment. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). Stated differently, the ALJ "'must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected.'" *See Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)). The ALJ's decision did not discuss relevant contrary evidence to his conclusion that

7

Leach's migraines are well managed with medication or address what, if any, impact Leach's migraines had on her ability to work. This is especially important because the VE testified that employers will tolerate no more than one day per month of employee absences. R. 64. The ALJ's failure to discuss all evidence relevant to Leach's migraines and to build a logical bridge from that evidence to the conclusion that she can perform light work with the limitations described in the RFC warrants remand in this case.

## CONCLUSION

For the reasons above, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). Although the decision is reversed because of the error in failing to sufficiently discuss the evidence relevant to Leach's migraines, the Commissioner should also address Leach's other claim of error, that the ALJ misapplied the medical vocational rules in finding that Leach had the RFC to perform light work, on remand. Further consideration of this claimed error on remand will aid in reaching the final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 26th day of October, 2020.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge